EXHIBIT 1

David R. Parkinson (8258) (davidparkinson@ppktrial.com)
Ronald F. Price (5535) (ronprice@ppktrial.com)
Christopher B. Sullivan (11053) (sullivan@ppktrial.com)
PRICE PARKINSON & KERR, PLLC
5742 West Harold Gatty Drive
Salt Lake City, UT 84116
Telephone: (801) 530-2900
Facsimile: (801) 530-2969

*Attorneys for Plaintiff*

---

## IN THE THIRD JUDICIAL DISTRICT COURT,
## COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| SanMedica International LLC, a Utah Limited Liability Company, Novex Biotech, LLC, a Utah Limited Liability Company, and Carter-Reed Company, LLC, a Utah Limited Liability Company<br><br>Plaintiffs,<br><br>vs.<br><br>LegitScript, LLC, an Oregon Limited Liability Company; and John Does I-X,<br><br>Defendants. | **COMPLAINT**<br><br>Case No. :<br><br>Judge |

Plaintiffs SanMedica International LLC ("SanMedica"), Novex Biotech, LLC ("Novex"),

and Carter-Reed Company, LLC ("Carter-Reed") sue Defendant LegitScript, LLC ("Defendant"

or "LegitScript") for false advertising, tortious interference, and other relief set below as follows:

## NATURE OF ACTION

Defendant offers consulting, monitoring, and compliance services to online merchants, search engines, credit card processors, and banks.  Defendant's services are used by some of the largest companies in the world, including Visa, Chase Bank, Facebook and Google.

As applicable to this case, Defendant purports to be an expert in regulatory compliance of dietary supplements offered for sale in the United States.  As part of the services Defendant offers to online merchants, banks, credit card companies and internet search engines, Defendant purports to have a "team of experts"  on compliance with  Federal Drug Administration ("FDA") and the Federal Trade Commission ("FTC") regulations.  In fact, Defendant does not employ anyone qualified as an "expert" in federal regulation of dietary supplements.

Defendant attempts to legitimize its services related to the dietary supplement industry by claiming that it has a "network" of business relationships that includes the FDA, FTC and "Big Pharma."   Defendant goes so far as to illegally place the FDA logo on its website in furtherance of its misrepresentations.  Relying on the expertise and relationships Defendant claims is has but in fact does not possess, LegitScript falsely holds itself out as a pseudo-government entity that can provide authoritative advice regarding the regulations that govern the dietary supplement industry.  LegitScript's false statements to online merchants have been successful, as LegitScript includes within its customers companies that include Facebook, Google, Microsoft and Yahoo!.

LegitScript has flagged tens of thousands of dietary supplements as violating FTC and FDA regulations, including Plaintiffs' products SeroVital, GF9, IBS Relief and Relacore products.  LegitScript's wrongful flagging of Plaintiffs' products, which are all in fact lawfully

sold and fully in compliance with all relevant FTC and FDA requirements, from being marketed on Google, Yahoo!, Facebook, and on other websites.

Despite its representations to the contrary, LegitScript rarely, if ever, performs any analysis of the dietary supplements it purports to monitor, but instead relies upon a database that was either intentionally or recklessly designed to over designate dietary supplements as problematic, when in fact most of the flagged supplements are fully compliant with federal regulations.  Plaintiffs' are just three of the victims of LegitScript's reckless business practices.

Plaintiffs are companies that sell dietary supplements to consumers within the United States.  Plaintiffs spend significant time and resources to make sure that the products they sell fully comply with FTC and FDA regulations.  Notwithstanding, without any substantive legal or factual analysis, LegitScript has advised its customers that Plaintiffs' products do not comply with federal regulations applied to dietary supplements.  LegitScript's actions have damaged, and continue to damage these Plaintiffs.

## JURISDICTION AND VENUE

1.      This is an action for false advertising and false designation under the Lanham Act, violations of the Utah Truth in Advertising Act, wrongful interference with business relations, and defamation.

2.      The Court has subject matter jurisdiction pursuant to Utah Code Ann. § 78A-5-102(1)..

3.      The Court has personal jurisdiction over the Defendant under Utah's long-arm statute, UCA §§78B-3-201 and 78B-3-205, because the Defendant has transacted business within the state by marketing its services to companies within the state of Utah and by providing

opinions regarding the legality of hundreds of products marketed and sold by companies based in Utah.

## PARTIES

4.      Plaintiff SanMedica International LLC ("SanMedica"), is a Utah Limited Liability Company.

5.      Plaintiff Novex Biotech, LLC ("Novex"), is a Utah Limited Liability Company.

6.      Plaintiff Carter-Reed Company, LLC ("Carter-Reed"), is a Utah Limited Liability Company.

7.      Defendant LegitScript, LLC ("LegitScript" or "Defendant") is an Oregon Limited Liability Company.

## GENERAL ALLEGATIONS

8.      LegitScript was initially formed by John Horton in Virginia in 2007 very shortly after (if not concurrent with) Mr. Horton served as an Associate Deputy Director, Office of National Drug Control Policy for the George W. Bush administration.

9.      Thereafter, in 2008, Mr. Horton re-formed LegitScript as an Oregon not-for-profit.  That non-profit was dissolved in March of 2009 and replaced with an Oregon for profit entity also in 2009.

10.     Mr. Horton still serves as the president of LegitScript and its principal place of business is at 1455 NW Overton Ave., Suite 400, Portland, Oregon 97209.  LegitScript's stated business activity is: "Consulting and compliance services for online merchants.  We have a team of experts in various regulatory and policy fields, including online healthcare.  We serve as an outsourced compliance and investigative department."

11.     Initially, LegitScript provided services to purportedly identify "rogue Internet pharmacies" that "sell or facilitate the sale of prescription drugs."  The definition of a "rogue Internet pharmacies" and the "standards" for classifying Web sites were all independently developed and determined by LegitScript.  As part of the process to identify "rogue Internet pharmacies," LegitScript formally aligned itself with the National Association of Boards of Pharmacy ("NABP") and, on information and belief, was bankrolled by the pharmaceutical industry in the United States – also known as Big Pharma.

12.     As might be expected by aligning itself with the NABP and Big Pharma, it has been reported that LegitScipt's true purpose was to put the online pharmacy industry out of business in order to "protect" NABP's pharmacy members and "protect" Big Pharma's ability to "price" prescription drugs.  This effort has been described as follows:

### How Big Pharma's Shadow Regulation Censors the Internet

Where industry can't get government to regulate the Internet in the way they want, they frequently turn to private deals with Internet intermediaries that we've termed Shadow Regulation. Big pharma is a major proponent of this practice… This private censorship regime … includes blocking blacklisted pharmaceutical websites from access to payment services, online advertising services, and domain names.

This particular Shadow Regulation network contains a confusing web of similar-sounding organizations with overlapping memberships, such as the Alliance for Safe Online Pharmacies(ASOP) and the Center for Safe Internet Pharmacies(CSIP). In simple terms the former is comprised mostly of the pharmaceutical industry, whereas the latter pulls in its partners such as Internet platforms (Facebook, Google, Microsoft and Yahoo!), payment processors (PayPal, Mastercard, and American Express), delivery providers (UPS), and domain name companies (GoDaddy and Rightside).

A third key player is LegitScript, which was instrumental in the formation of both ASOP and CSIP, and carries out most of the operational level arrangements that are agreed at a level of principle by those organizations.

13.    As referenced above, in order to leverage its "value" to tighten the grip on competition by targeting whichever industry it chose to target, LegitScript positioned itself to be a central chokepoint for competition by expanding its reach to Internet selling and advertising platforms such as Facebook, Google, Bing and Yahoo!; domain name companies and credit card payment processors such as Visa, PayPal, Mastercard and American Express.

14.    Chokepoint for what competition?  Whatever LegitScript chose to or was funded to choke.

15.    As such, having successfully driven out of business the vast bulk of online pharmacies[1], in or about June of 2012, LegitScript turned its attention to the dietary supplement business by rolling out a "new search feature (in beta)" of the "world's first and only global database (as far as we know) that tells you whether dietary supplements or other healthcare products are know to have any safety problems."  As LegitScript explained:

> Ever wonder if those diet pills you saw advertised online are safe? What about the "100% natural sexual enhancement" supplements? Now there's a place you can go to find out.
>
> LegitScript is pleased to roll out a new search feature (in beta): LegitScript Healthcare Product Search, available on our home page. This is the world's first and only global database (as far as we know!) that tells you whether dietary supplements or other healthcare products are known to have any safety problems. You can find out whether a product is known to contain toxins or active pharmaceutical ingredients, is marketed with unsupportable claims, or has some other problem suggesting a risk to your or your animal's health.
>
> …
>
> **How we classify these substances**. It's important to understand that LegitScript's Healthcare Product Search isn't a certification or approval program. We don't test

---

[1] LegitScript curiously, if not suspiciously, found (as of February 26, 2010) that 96.18% of all online pharmacies were "rogue".

the products for content, and there will never be any "LegitScript-approved" dietary supplements.

16. LegitScript admits it doesn't test the products, so how does LegitScript populate its "first and only global database" of dietary supplements?  On information and belief, among other things, LegitScript searches for the legally required disclaimer of -- "This statement has not been evaluated by the FDA. This product is not intended to diagnose, treat, cure, or prevent any disease" -- to identify products and classify them as dietary supplements.  Then, if the dietary supplement makes any 'structure/function' claims[2], LegitScript – without testing or any competent expertise or diligent investigation – automatically flags the supplements as "problematic."  The problem with this system is that federal regulations and the FDA *allow* dietary supplements to make structure/function claims so long as, among other things, the supplements *has* the required FDA disclaimer of "This statement has not been evaluated by the FDA. This product is not intended to diagnose, treat, cure, or prevent any disease."  In other words, LegitScript's dietary supplement database is designed to choke competition by capturing everything that is legally complying with dietary supplement regulations.

17. Specifically, LegitScript "classifies" dietary supplements in its database.  For example, a dietary supplement is "*Per se* problematic" and should "not be used or marketed under any circumstance" if "[t]he product name intrinsically implies safety or efficacy to treat or cure a medical condition, but the product is not approved as a medicine."  Likewise, dietary supplements are "Context-dependent" problematic is the product is (or has been) "marketed in a way that falsely suggests safety and efficacy to treat or cure a medical condition."  The problems

---

[2] A product claim that describes the role of a dietary ingredient intended to affect the structure or function of the body (*e.g.*, "calcium builds strong bones").

with LegitScript's classification program are legion: 1) admittedly it does not test supplement

products; 2) it has not sought out or researched, at least for the plaintiff here, any of the required

substantiation a supplement company must have before it goers to market; 3) without testing,

LegitScript  -- and LegitScript alone – determines what a dietary supplement product name

"intrinsically implies" for it to be "*Per se* problematic"; 4) it captures supplements that are "not

approved as a medicine" or suggests "efficacy to treat or cure a medical condition" when – by

definition – dietary supplements are not drugs or medicines and are required to have the FDA

disclaimer to that very fact.  On information and belief, LegitScript's "classification" system for

dietary supplements is nothing more than a pretext to stifle and choke out competition.

18.     How does LegitScript then "engage" its classification system to stifle competition

it chooses or has been directed to choke out?  By leveraging its chokepoint in the "network"

LegitScript has burrowed itself into the middle of.  Namely, through pressure from LegitScript's

funders and through other independent means, LegitScript has attached itself to credit card

processors, credit card companies and credit card merchants so as to squeeze out dietary

supplement companies from being able to process credit card orders by phone or *via* the Internet.

Also, LegitScript has wormed its way into online advertisers so that once the advertisers run the

dietary supplement through LegitScript's database, the product is 'red-flagged' and access to

advertising platforms are denied.  LegitScript "markets" its "shadow regulation" services to

online platforms by telling the online platform providers that the sale of illegal products on their

networks will subject them to criminal and civil penalties from the FDA and FTC.

19.     As part of its marketing campaign, LegitScript has informed potential customers

that the FDA and FTC support LegitScript's shadow regulation efforts and that this close

relationship with regulators allows LegitScript to insulate its customers from potential liability

from FTC and FDA regulators.  LegitScript goes as far as to use the logos of the FDA and FTC

in its marketing materials and to label the FDA and FTC as members of LegitScript's

"Network."

20.     However, LegitScript's services are not promoted or endorsed by the FTC or the

FDA.  LegitScript does not have any unique relationship with the FDA or FTC, nor does

LegitScript have any specific expertise in FDA or FTC regulations.

21.     The LegitScript database is nothing more than a pretext as the LegitScript

database is set up to flag as problematic and/or dangerous legitimate products—like those sold

by the Plaintiffs in this case—that do not fit into any of the problematic classifications that

LegitScript purports to monitor and identify.

22.     For example, LegitScript has flagged SanMedica's product SEROVITAL® with a

"Yellow Flag" and the following "classification:"

> This product is, or has been, impermissibly marketed to affect the structure or
> function of the body, by claiming to stimulate the pituitary gland to increase
> hormone production, without adequate substantiation.  These types of claims are
> problematic.

23.     LegitScript's statements about the SEROVITAL® product are false and constitute

libel *per se*.  As a dietary supplement, with the required FDA disclaimer, SEROVITAL® is

*allowed* to make structure/function claims, and SEROVITAL® has adequate substantiation for

the claims it makes.  Tellingly, LegitScript has never even requested that SanMedica provide

substantiation for LegitScript's review, much less performed a review of the substantiation.

24.     Similarly, LegitScript has intentionally flagged Novex's GF-9® product.  Again,

LegitScript has never conducted a review of Novex's GF-9® product substantiation, or made any

inquiry to support the libelous statements it publishes regarding GF-9®.   As a direct result of

this false designation, SanMedica and Novex have been unable to use many of the most

profitable online marketplaces to market and sell SeroVital® and GF-9®.

25.     Another example of LegitScript's libelous flagging of legitimate dietary

supplements is Carter-Reed's product Relacore®.  LegitScript has placed a "Red Flag" on

Relacore® for the following stated reason:

> Counterfeit products (using the "Relacore" trade name) were found to contain
> sibutramine, an active pharmaceutical ingredient.  Genuine versions of this
> product are not known to contain active pharmaceutical ingredients.

26.     Accordingly, LegitScript has libelously placed a Red Flag asserting the existence

of a pharmaceutical ingredient (a designation purportedly reserved for the most egregious

violations of FDA and FTC regulations) on a product that as sold by Carter-Reed does not

contain any pharmaceutical ingredients.  As a direct result of this false designation, Carter-Reed

has been unable to use many of the most profitable online marketplaces to market and sell

Relacore®.

27.     Another Carter-Reed product that has been libelously flagged by LegitScript is

IBS Relief®.  LegitScript placed a Yellow Flag on IBS Relief, with the following libelous

statement:

> This product is, or has been, impermissibly marketed for the cure, mitigation, treatment,
> or prevention of diseases such as IBS.  These are considered problematic disease claims.

28.     LegitScript's statements about IBS Relief® are, again, demonstrably false.  IBS is

not a disease.  To the contrary, the National Institute of Health has expressly found that IBS is

not a disease.

29.     Additionally, plaintiffs' credit card processor recently terminated plaintiffs account and plaintiffs incurred material damages and hardship in replacing that account  because of LegitScript's spurious, incompetent and libelous flags of plaintiffs' products on LegitScript's database.

30.     Nor does LegitScript inform its customers that its database will flag a product as dangerous and/or problematic simply because the product manufacturer has been the target of counterfeiters, or if the product at issue has a spelling that is similar to another product that has been flagged as dangerous by LegitScript's database.  Given that the database contains tens of thousands of names, the risk of flagging by association is significant and, at a minimum, grossly reckless.

31.     LegitScript entices its customers into subscribing to its services based upon the following slanderous statements about the dietary supplement industry:

> If a dietary supplement contains ingredients that are not permitted "dietary ingredients," then the FDA considers it a "new drug" – and drugs have to be approved. So the dietary supplement becomes an "unapproved drug."

> If a dietary supplement claims to diagnose, cure, prevent, mitigate, or treat a disease, the FDA considers it a drug (as do other countries' medicines agencies). So again, the dietary supplement becomes an unapproved drug.

> Stay away from dietary supplement merchants that break the rules!

### How Big is the Problem?

• Over 55,000 dietary supplements are sold in the US alone, mostly unregulated.

• Global dietary supplement industry: approx. $85 billion/year

• According to the Journal of the American Medical Association, out of more than two dozen supplements that were recalled because they were tainted with anabolic

steroids or prescription drugs, two-thirds were back on the market a year later, with the same illegal ingredients.

• Dietary supplements account for nearly 20 percent of drug-related liver injuries that turn up in hospitals.

• LegitScript's database includes over 20,000 problematic products. We have classified over 19,000 dietary supplement websites (many of which sell problematic products).

32.     In other words, LegitScript purports to provide authoritative review and analysis of over 20,000 "problematic" dietary supplements.  However, based on the examples set forth above, it is clear that LegitScript not only exaggerates its own capacity to serve as a pseudo-regulatory authority for the dietary supplement industry, LegitScript intentionally exaggerates the number of dietary supplements it asserts do not comply with FDA/FTC regulations. LegitScript's fraudulent actions have likely resulted in billions in losses to legitimate nutraceutical companies.

33.     LegitScript falsely exaggerates its own abilities and qualifications, and its findings with regard to "problematic" dietary supplements in the marketplace, to incentivize potential customers to subscribe to its services and to please the pharmaceutical companies that provide support and financial backing.  These same pharmaceutical companies have long desired to eliminate dietary supplements that in many cases provide a safer alternative to prescription drugs.  Through their puppet LegitScript, the pharmaceutical companies have managed to significantly diminish the ability for legitimate nutraceutical companies, like Plaintiffs, to conduct business.

34.     LegitScript claims that it has a "registration" system for dietary supplement products to obtain "clearance" for their products.  In fact, no such registration system exists, or it

is not functional.  Plaintiffs have attempted to sign-up for the registration system on two

occasions and the "system" was not functioning.  LegitScript did not even bother to respond to

Plaintiffs' email requests for additional information regarding the registration program.  When

specifically asked if the registration system was functioning, Legitscript's CEO did not respond.

35.     In an attempt to resolve this dispute short of litigation, counsel for Plaintiffs

offered to meet with LegitScript in its office.  Counsel's request was ignored.

## FIRST CAUSE OF ACTION

## LANHAM ACT FALSE ADVERTISING (15 USC § 1125(a))

36.     Plaintiffs re-allege the allegations of Paragraphs 1-35 as if set forth in full herein.

37.     LegitScript made false representations of fact regarding its services, including but

not limited to: 1) representing to numerous internet platforms, search engine providers, social

media companies and payment processing companies that LegitScript is supported by and

coordinates its efforts with the FTC and FDA; 2) by representing that LegitScript has expertise in

the dietary supplement industry to decipher what products are legal, and which dietary

supplement products are not legal for sale and purchase in the United States; 3) that LegitScript's

database can accurately detect and flag dietary supplements that "either contain dangerous

ingredients or inappropriately imply safety or medical effectiveness;" 4) that its database will not

flag products that are legal for sale in the United States; and 5) representing that LegitScript has

the expertise to accurately monitor content on internet platforms, search engine providers, social

media companies and payment processing companies to ensure that "Internet platforms operate

in compliance with applicable healthcare laws and regulations."

38.     These material assertions of fact were false.  LegitScript is not supported by the FTC or FDA, nor does LegitScript have authority to infer a working relationship with either agency.  Nor has the FTC or FDA authorized LegitScript to use their logos in LegitScript advertising presentations.  LegitScript does not have expertise in FDA/FTC regulations—or the dietary supplement industry—that would provide it with the ability to decipher which dietary supplement products are legal, and which products are not legal for sale and purchase in the United States.  LegitScript's alleged "database" cannot accurately detect and flag dietary supplements that "either contain dangerous ingredients or inappropriately imply safety or medical effectiveness."  To the contrary, on information and belief, LegitScript's database routinely flags legitimate dietary supplement products as illegal for sale and/or problematic. Finally, LegitScript does not have the expertise or capacity to accurately monitor internet platforms, search engine providers, social media companies and/or payment processing companies to ensure that "Internet platforms operate in compliance with applicable healthcare laws and regulations."

39.     LegitScript made these material false assertions of fact in interstate commerce in advertising directed to and presentations made to online search engine providers, internet platforms, social media companies and payment processing companies to encourage these customers to sign on to their services.  LegitScript's false advertising of its capabilities and expertise has deceived numerous internet platforms, search engine providers, social media companies and payment processing companies into purchasing LegitScript's services.

40.     Plaintiffs have been injured by LegitScript's misrepresentations in that LegitScript has flagged many of Plaintiffs' products as illegal and/or problematic, and has

communicated these improper flags to internet platforms, search engine providers, social media companies and payment processing companies with whom Plaintiff has attempted to do business. Plaintiff has suffered damages in an amount to be proven at trial as a direct result of Defendant's false advertising.

## SECOND CAUSE OF ACTION

## LANHAM ACT FALSE DESIGNATION (15 USC §1125(a))

41.     Plaintiffs re-allege the allegations of paragraph 1- 40 as if set forth in full herein.

42.     Defendant uses trademarks associated with the FTC and the FDA in its commercial advertising to promote itself as a pseudo-regulatory authority.  Defendant also represents in its advertising that it has the backing and support of the FDA and FTC regarding its monitoring of the dietary supplement industry.

43.     Defendant's advertisements are likely to cause confusion, and have caused confusion, and deceived potential customers and actual customers into believing that there is an affiliation, connection, association, sponsorship and approval of the FDA and FTC of the services being offered by Defendant.  When in fact no such affiliation, connection, association, sponsorship and approval of the FDA and FTC exists.

44.     Defendant intentionally placed these misleading and false statements as to the affiliation, connection, association, sponsorship and approval of the FDA and FTC of the services being offered by Defendant into interstate commerce as part of a successful attempt to use this false relationship with federal regulators to convince potential customers to subscribe to LegitScript's dietary supplement monitoring services.

45.     Defendant's false designation has caused injury to many legitimate nutraceutical companies, including the named Plaintiffs.  Plaintiffs have been damaged as a result of these false designations in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

**UTAH TRUTH IN ADVERTISING ACT – Utah Code Ann. §§ 13-11a-1 et seq.**

46.     Plaintiffs re-allege the allegations of paragraph 1-45 as if set forth fully herein.

47.     Defendant uses trademarks associated with the FTC and the FDA in its commercial advertising to promote itself as a pseudo-regulatory authority.  Defendant also represents itself as having the backing of the FDA and FTC in its commercial advertising.

48.     Defendant's advertisements are likely to cause confusion, and have caused confusion, and deceived potential customers and actual customers into believing that there is an affiliation, connection, association, sponsorship and approval of the FDA and FTC of the services being offered by Defendant.  When in fact no such affiliation, connection, association, sponsorship and approval of the FDA and FTC in fact exists.

49.     As set forth more fully above, LegitScript made false representations of fact regarding LegitScript's expertise in the dietary supplement industry to decipher what products are legal, and which products are not legal for sale and purchase in the United States. LegitScript has also falsely represented that LegitScript's database can accurately detect and flag dietary supplements that "either contain dangerous ingredients or inappropriately imply safety or medical effectiveness."  And LegitScript has misrepresented that its database accurately monitors internet platforms, search engine providers, social media companies and payment processing

companies to ensure that these companies "operate in compliance with applicable healthcare laws and regulations."

50.     In fact, LegitScript is not qualified to make legal determinations as to what is, and is not legal marketing and sale of dietary supplements in the United States.  Nor, in most cases, has LegitScript even attempted to perform such a determination with regard to the tens of thousands of dietary supplements it has flagged as "problematic."  Moreover, LegitScript's database is recklessly designed to over-designate (or "flag") dietary supplements as problematic, notwithstanding the fact that no actual analysis of the wrongly flagged dietary supplements ever takes place.  Indeed, as set forth above, LegitScript does not perform any substantive review of the substantiation for most of the dietary supplements it cavalierly "flags" as problematic under applicable law.

51.     LegitScript's conduct in violation of the Utah Truth in Advertising Act has caused Plaintiffs injury and damage in an amount to be proven at trial by removing numerous channels of trade for Plaintiffs' products.

## FOURTH CAUSE OF ACTION

## WRONGFUL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

52.     Plaintiffs re-allege the allegations of paragraph 1-51 as if set forth fully herein.

53.     Defendants knew and understood that dietary supplement companies market their products through internet platforms, search engine providers and social media companies. Defendants also knew and understood that dietary supplement companies utilize payment processing companies to process purchases made using credit/debit cards.

54.     Through improper means as set forth above, Defendant falsely deceived potential customers and actual customers into believing that there is an affiliation, connection, association, sponsorship and approval of the FDA and FTC of the services being offered by Defendant. When in fact no such affiliation, connection, association, sponsorship and approval of the FDA and FTC exists.

55.     Through improper means, as set forth above, LegitScript made false representations of fact regarding LegitScript's expertise in the dietary supplement industry to decipher which dietary supplement products are legal, and which products are not legal for sale and purchase in the United States.  LegitScript has falsely represented that LegitScript's database can accurately detect and flag dietary supplements that "either contain dangerous ingredients or inappropriately imply safety or medical effectiveness."  And LegitScript has misrepresented that its database accurately monitors internet platforms, search engine providers, social media companies and payment processing companies to ensure that these "platforms operate in compliance with applicable healthcare laws and regulations."

56.     In fact, LegitScript is not qualified to make legal determinations as to what is, and is not legal marketing and sale of dietary supplements in the United States.  Nor has LegitScript even attempted to perform such a determination about Plaintiffs' products.

57.     Notwithstanding, through the improper means of defamation, LegitScript flagged SanMedica's product SEROVITAL® with a yellow flag and the following "classification:"

> This product is, or has been, impermissibly marketed to affect the structure or function of the body, by claiming to stimulate the pituitary gland to increase hormone production, without adequate substantiation.  These types of claims are problematic.

58.     LegitScript's statements about the SEROVITAL® product are false and constitute libel per se.  SEROVITAL®  does not make structure function claims, and SEROVITAL® has adequate substantiation for the claims it makes.  Tellingly, LegitScript has never even requested that SanMedica provide substantiation for LegitScript's review, much less performed the review of the substantiation that would be required to justify LegitStript's statement that substantiation does not exist.

59.     Similarly, through the improper means of defamation, LegitScript similarly flagged Novex's GF-9® product.  Again, LegitScript has never conducted a review of Novex's GF-9® product substantiation, or made any inquiry to support the libelous statements it publishes regarding GF-9®.

60.     Another example of LegitScript's libelous flagging of legitimate dietary supplements is Carter-Reed's product Relacore®.  LegitScript has placed a "Red Flag" on Relacore® for the following stated reason:

> Counterfeit products (using the "Relacore" trade name) were found to contain sibutramine, an active pharmaceutical ingredient.  Genuine versions of this product are not known to contain active pharmaceutical ingredients.

LegitScript has libelously placed a Red Flag asserting the existence of a pharmaceutical ingredient, (a designation purportedly reserved for the most egregious violations of FDA and FTC regulations), on a product that as sold by Carter-Reed does not contain any pharmaceutical ingredients.

61.     In addition, LegitScript has negligently and recklessly designed a database in such a way as to over designate dietary supplements as problematic, when in fact, none of the criteria

given by LegitScript for a product that qualifies as problematic in fact exist.  Indeed, as set forth

above, LegitScript does not perform any substantive review of the substantiation for most of the

dietary supplements it cavalierly "flags." Because of the foregoing, Defendant has interfered

with Plaintiffs' ability to conduct business with numerous internet platforms, search engine

providers and social media companies.  Defendant's intentional interference has injured

Plaintiffs in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

## DEFAMATION (TRADE DISPARAGEMENT)

62.     Plaintiffs re-allege the allegations of paragraph 1- 61 as if set forth fully herein.

63.     LegitScript published the following false statements regarding SanMedica's

product SEROVITAL® to several of its customers:

> This product is, or has been, impermissibly marketed to affect the structure or
> function of the body, by claiming to stimulate the pituitary gland to increase
> hormone production, without adequate substantiation.  These types of claims are
> problematic.

64.     LegitScript made the same and/or similar false statements regarding Novex's GF-

9® product.

65.     LegitScript's statements about the SEROVITAL® and GF-9® products are false,

and made without privilege of authorization.  SeroVital® and GF-9® in fact do not make

structure function claims.  Moreover, SanMedica and Novex have adequate substantiation for

each claim made about their respective SEROVITAL® and GF-9® products.

66.     Tellingly, LegitScript makes these statements negligently and/or recklessly, as it

has never even requested that SanMedica or Novex provide product substantiation for

LegitScript's review, much less performed a review of the substantiation.

67.     Another example of LegitScript's defamation of Defendants is the unjustified Red Flag on Carter-Reed's product Relacore®.  LegitScript has placed a "Red Flag" on Relacore® for the following stated reason:

> Counterfeit products (using the "Relacore" trade name) were found to contain sibutramine, an active pharmaceutical ingredient.  Genuine versions of this product are not known to contain active pharmaceutical ingredients.

LegitScript has libelously placed a Red Flag asserting the existence of a pharmaceutical ingredient, (a designation purportedly reserved for the most egregious violations of FDA and FTC regulations), on a product that as sold by Carter-Reed does not contain any pharmaceutical ingredients.

68.     On information and belief, LegitScript has made similar false statements about other dietary supplements marketed by Plaintiffs.

69.     The defamation set forth above has injured these Plaintiffs is an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

## INJUNCTIVE RELIEF

70.     Plaintiffs re-allege the allegations of paragraph 1- 69 as if set forth fully herein.

71.     LegitScript is engaged in violations of the Lanham Act, violations of the Utah Truth in Advertising Act, wrongful interference with business relations, and defamation.

72.     Plaintiffs will suffer irreparable harm unless the court issues an injunction enjoining this wrongful conduct.

73.     Therefore, Plaintiffs are entitled to a permanent injunction against Defendant, its officers, agents, employees, affiliates, parents, and all persons acting in concert or participation with them who receive actual notice of the injunction by personal service or otherwise, enjoining and restraining them directly or indirectly from falsely advertising, marketing, packaging, labeling, and/or selling their dietary supplement monitoring services, using any false representations, which misrepresent the nature, characteristics, or qualities of Defendant's services or other commercial activities or from engaging in any other false advertising with regard to Defendant's products and services

## **PRAYER FOR RELIEF**

1.     A permanent injunction against Defendant, its officers, agents, employees, affiliates, parents, and all persons acting in concert or participation with them who receive actual notice of the injunction by personal service or otherwise, enjoining and restraining them directly or indirectly from falsely advertising, marketing, packaging, labeling, and/or selling their dietary supplement monitoring services, using any false representations, which misrepresent the nature, characteristics, or qualities of Defendant's services or other commercial activities or from engaging in any other false advertising with regard to Defendant's products and services.

2.     Judgment for the damages suffered by Plaintiffs because of Defendant's false advertising, unfair competition, defamation, intentional interference, and deceptive acts or practices, in an amount not less than $75,000.00, to be determined at trial.

3.     Judgment directing an accounting of Defendant's revenues and profits by reason of its false advertising, unfair competition, defamation, intentional interference, and deceptive acts or practices.

4.     Treble damages pursuant to 15 U.S.C. § 1117, exemplary damages, and/or punitive damages because of Defendant's willful and intentional violations of law.

5.     Judgment awarding Plaintiffs reasonable attorneys' fees in this action, pursuant to 15 U.S.C. § 1117 and the UTA, and otherwise as appropriate.

6.     Judgment awarding Defendant's profits to Plaintiffs, and awarding damages sustained by Plaintiffs and the costs of this action.

7.     Pre- and post- judgment interest.

8.     Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED this 4th day of May, 2018.

PRICE PARKINSON & KERR, PLLC

/s/ David R. Parkinson
DAVID R. PARKINSON
RONALD F. PRICE
CHRISTOPHER B. SULLIVAN
*Attorneys for Plaintiff*

Plaintiffs' Address:

5742 West Harold Gatty Drive
Salt Lake City, UT 84116